And I want to welcome everyone to the 4th Circuit this morning. We have Four interesting cases and lots of good lawyers Good to be with you Yes, you're representing the appellants In the first day. Yes, Your Honor May it please the Court, Jordan Howlett for the appellants, Collision Towing and Auto Body, and Cornelius Woods. With the Court's permission, I would like to reserve 6 minutes for rebuttal. Your Honors, this case is about the difference between regulating property and taking it. For more than 8 months, Prince George's County padlocked every entrance to my client's commercial property at 7229 Landover Road. The Joint Appendix at 420 confirms that fact. The padlocks were not removed when my client appeared at the property and asked to come into compliance. They were removed only when the property was sold, and they were removed only for the new owner. Joint Appendix JA-422 confirms that fact, too. There is a name in our constitutional tradition for what the County did here. It is not regulation. It is appropriation. And under the Fifth Amendment, an appropriation requires just compensation. Your Honors, we ask that the Court respectfully do three things. He sold his property, though. He was forced to, Your Honor. He had no other option. And does the record show how much money he got out of it? The record doesn't show that, Your Honor. Then how is there any evidence of lost value? Your Honor, there's a number of things in the record that, with respect to the lost value, the diminution in value in the real property itself, I don't believe there's an amount in the record that shows the difference between what the value of the property was and what the forced sale value was. It happened towards the end. Don't we need that? Doesn't there need to be some evidence of value and what the lost value may have been? Your Honor, yes, for purposes of the real property diminution in value. For purposes of the Penn Central Factor test, specifically. When I get there, Your Honor, I'll note that we are arguing a per se taking, primarily, and the alternative taking, a regulatory taking, under the Penn Central Factor. But yes, Your Honor, for . . . You said there was nothing else he could have done other than sell the property. He could have abated the nuisance, couldn't he? Your Honor, if you view the record in the light most favorable to my client, with all inferences drawn therefrom, there's substantial evidence in the record that he abated the nuisance. In fact, I myself, representing him, sent a letter at the . . . Where should I . . . You said there's substantial evidence that he abated the nuisance. Where is some evidence I could look to? Your Honor, if you look to . . . Do you have photographs? Your Honor, there's no photographs, but there is . . . Because there are photographs of the nuisance, just not of . . . I don't see any abatement. Of the alleged nuisance, Your Honor. The problem in the record supports, in his deposition, Mr. Woods testified that . . . So the nuisance is . . . That he doesn't think that's his property. It's not his property. It's not. The trash dumpster that's in this picture, that shows this illegal dumping happening, Mr. Woods testified, and the plat confirms that that's not his property. In fact, there was a lot of back and forth in the deposition about the fact that his dumpsters remain behind a gate on his property, and that the dumpsters across the street are not his dumpsters, and that there's been illegal dumping happening there for years, and that he complained to the county, and so did the neighboring property owner on a number of times about this illegal dumping. Not his property, Your Honor. And viewed in the light most favorable, I think that's weighing the credibility of the evidence, and I think that's a task for the jury. Well, you know, this is a federal takings claim, and it's really a threshold question whether this was even a takings, cognizable under the takings clause, because you have a nuisance. Are you familiar with a case we handed down last year, D.A. Real Estate Investment v. Norfolk? No, Your Honor. Take a look at it when you go back. I take it what you want out of this case is damages. Yes, Your Honor. Well, I can tell you in that case, we said it, these are the words. If the property was a public nuisance, the city had the authority to abate the nuisance without paying compensation. Are you familiar with that? Yes, Your Honor. Why does that not dispose of this case if it is clear this was a nuisance? That's the issue, Your Honor. In this case, which is distinguishable from that case, and I'll go and read the facts of that case, Your Honor. I'm not familiar with the facts, but I presume that in that case it's undisputed. Don't try to distinguish something you haven't read. Oh, yes, Your Honor. Go back and read a little bit of it, and then come back and tell me how it distinguishes it. I will. Because that's just one sentence that I read out of that opinion. I mean it goes on pretty much deeper than that. Your Honor, let me tell you why this case is different from— let me just tell you why. There is no clear public nuisance in this case. Well, they had two hearings. They gave your client hearings. The first one he represented himself. The second time he brought in a lawyer. And after each hearing, they had declared this a public nuisance. They wrote an opinion. I mean, I was impressed that an administrative body was doing this kind of work and writing it up. And they—my recollection, that they did declare this to be a public nuisance. And, Your Honor, you're right. The nuisance abatement board did declare that. The lower court— And it's the nuisance abatement board. And they declared this a public nuisance, and you're standing up here saying it's not a nuisance. Well, that's completely contrary to what they declared. And that's their job. You're absolutely correct, Your Honor. And at this point, I would say there is substantial evidence in the record that the nuisance abatement board acted outside the confines of the law. The lower court even says it in the opinion that the plaintiffs— But you're arguing that their declaration of a nuisance was erroneous. Your Honor, I'm—we're arguing that the nuisance abatement board did not follow the law with respect to— That what they did was error. They had to be wrong. That there shouldn't have—so they did not— The nuisance abatement board members, and it's in the record, that admitted under oath that they fraudulently signed off on requirements that they— Oh, wait. Where in the JA did they say that they fraudulently—did they use the word fraudulently? They were asked that specifically in the deposition. Okay, where in the—what JA? Sorry. Give me just one second, Your Honor. I don't want to take up all your time. You can look for it and tell me later. Yes, Your Honor. I will—I'll get it for you on rebuttal. Let me ask a follow-up on that. That is, the determination, as Judge King said, is made by the board, and this is under Maryland law as to what a nuisance is. The board made an initial determination. It didn't appeal that at all. And then even here, where would the appeal for a board's determination that something is a nuisance be? Is that with us, under Maryland law, or is it the state court? It's the state court, Your Honor. Did you appeal the determination in state court that this was a nuisance? Your Honor, the plaintiffs did not appeal, and the reasons they did not appeal is they were trying— It's not important to me right now. I've got your reasons right now, but I'll get those. But I want to know, did you appeal it? Because we are talking state law, and if the state administrative board make a determination, your appeal is in saying, we disagree with this being a taken—disagree with this being a nuisance. And you didn't do that. So then it seems rather conclusive, under Maryland law, this is a nuisance, even when it comes to the federal court. When it comes to the federal court, the question here is a federal takings claim, for which the question is, do you even have such a claim if it's a nuisance? Your Honor— And I think you pretty much agreed that if this is a nuisance, you don't have a takings claim. Do you agree with that? Your Honor, I do agree to this extent with that position. If this was a public nuisance, that a legitimate body followed the law and adjudicated this property as a public nuisance, if that were the case, and they followed the law, and they rendered this property a public nuisance under the Prince George County Code, which defines a public nuisance, if they did that, then I would agree, and we would not be here today. This thing is a stretch. I mean, we look at Habeas cases, and Congress has really limited what we can do with a state court decision, but this is a state matter for which the appeal would be for Maryland, as its own sovereign, to determine, is this a nuisance? And yet, it's sort of a collateral attack you're now making to us on a state law and saying, well, that's not good. The board didn't do its job, or they failed to do it right, but you didn't appeal that aspect of it. And if you had, and they said, no, it's not right, then I see maybe the takings follow, but I'm having some difficulty understanding what is our role here as the federal court with regard to a state law determined by a state administrative agency that you did not appeal to any of the courts there for them to determine as to whether it was satisfactory under Maryland law. But you want us now to tell Maryland that its law is not, that the way it did this was not satisfactory, and yet they didn't get a chance to do it. And, Your Honor, I completely understand. I want to just note, it's not the General Assembly. It's not a state statute. It's Prince George County local ordinance. Prince George County admitted in this case. How does that change anything? Because you know what that means. That means they can't operate except under the authority of the legislature. So if it is a Prince George ordinance, that doesn't give us jurisdiction over Prince George any more than Maryland. I mean, I don't know how that changes it. It does, Your Honor, when a state actor violates someone's federal constitutional rights. Did you raise the constitutional question in the state proceeding? There was no state proceeding, Your Honor. Well, there were two hearings. I'm sorry. Okay, so let's… We've already talked about that. Did you claim that they were violating the Fifth Amendment? So, Your Honor… The answer is no. The answer is no, and the Nuisance Abatement Board does not have a… You first raised the Constitution in the district court. Yes, Your Honor. The Nuisance Abatement Board does not have the authority to adjudicate constitutional issues. The Circuit Court of Maryland does have that authority. But you had an opportunity to go there and raise the Fifth Amendment. Your Honor, if we did, it would have been removed to this court. But you're talking about a takings clause. You want to be paid for your property, and you sold it. You sold your property, and you don't tell us what you sold it for. You may have sold it for ten times what it was worth. We don't know. You may have sold it for next to nothing. We don't know. But we know you sold it because that's in the record. Yes, Your Honor. It was sold. Your Honor, the other piece to that is that there were more than 20 years of license contracts with insurance industries that were eviscerated because of this. There were more than 11 employees' lives who were turned upside down because of this. What does that have anything to do with the value of the property? Well, Your Honor, it's the value of the real property. But there was property here in the terms of the actual business license that my client owned. So you're arguing a takings of the business license? Your Honor, we're arguing— I didn't see that. In the appellant brief, we argue that all of the property associated with padlocking this business for eight months, prohibiting the business from operating— The question that I could really get into is a business interest is not a property interest. You're bringing a Fifth Amendment—you're bringing a takings clause, Federal Takings Clause, actually. That's not a business interest. It's a property interest. And you're addressing business interests. And, Your Honor, I'm not—and I want to be clear. I'm not talking about the interest for one to pursue their profession. You're talking about 11 employees. You're talking about insurances and all other things. That's not a property interest. The insurance contracts, Your Honor, the contracts themselves that were in place are property under state law. The insurance contracts, the goods and all of the equipment that my client lost as a result of this, the ultimate issue here, Your Honors, is that this nuisance abatement board is comprised of seven members, none of which are attorneys, three of which are appointed from the agencies, the three agencies that actually are the only ones that file nuisance petitions. They're required to do certain things under the code, like submit a sworn statement to support a nuisance petition. They're required to give the respondent evidence before hearing. And the record shows that they didn't do any of this. Not only that, the worst part— I think at the end of the day, your client does have a very compelling factual situation, at least when you look at it in the light most favorable to him. He's got a business in what is characterized as a bad part of town, so to speak. And that business is—he doesn't have control of everything that comes up there. People are parking cars, doing all kinds of things. But to go back to the basis of it, whether it's a nuisance comes under state law. And it seems to me that if a state makes a determination, be it through Prince George County or however, that it's a nuisance, that you then appeal that within the state system. And that's the difficult—it's not just a jurisdictional question. You don't fold in that kind of action into a federal action by simply saying, well, it's a federal taking, because you are limited there to what is a property interest. And when you look at the case I gave you and the other cases on it, and it's pretty factually similar to what we're dealing with here as to— because the same kind of argument is being made is that this nuisance was really a property-type taking because they hadn't done it right, so to speak. And, Your Honor, my time is out. May I briefly respond? Please. Your Honor, if this was a circuit court case, if this originated in the circuit court for a nuisance action that a circuit court judge presided over, right, and issued an order that's a quasi-injunction, shutting down a business for 12 months, it would have been different if it was just a fine here. If it was a fine or if it was a temporary closure order. This was not temporary. The nuisance abatement board shut—this administrative body shut down this property. So what court would you appeal in Maryland? Would you appeal a board's determination like this? Where would it be appealed to? It would be appealed to the circuit court, but that's the problem— This is the circuit court of Prince George's County. Yes, Your Honor. And then you could go from there to the high court. So, yes, Your Honor, you would go from there to the Maryland Appellate Court, but in appealing this to the circuit court, there would have— And you didn't avail yourself of those opportunities. You went directly to the federal court and say, this is Fifth Amendment, without ever raising it in the state court, never mentioning it. And you sold the property, and you didn't tell anybody what you sold it for. So how could you even show that you lost anything? You may have made money on it. You sold it. And, Your Honor, the problem was the sale happened towards the end of discovery. It happened at the very end of this case. So that's the big problem. And, Your Honor, the plaintiffs tried to comply completely with everything— You said it was toward the end of discovery. Was it after discovery? It was right at the end of discovery, Your Honor. That's why it came out. It was within weeks of the discovery deadline ending. The discovery deadline had not ended. The discovery deadline had not ended. So you could have put it into evidence, but you didn't. And now we have no idea, as Judge King says, what the value of the property was. We have what the property was sold for, Your Honor. What we don't have is the appraised value of the property at the time. We don't have that, Your Honor. I will just note that the plaintiffs tried every effort to comply, even with the Nuisance Abatement Board order, and that's the issue with the regulatory taking here. The plaintiff even submitted a request at the behest of the inspector who came to the property and told him to send an email to the Nuisance Abatement Board asking them to lift the order because he had complied with the Nuisance Abatement Board's order for abating the nuisance. That was done. It was ignored. And the Nuisance Abatement Board member said— We've been very generous with you on giving you time. And you've saved some time for rebuttal. Yes, Your Honor. Why don't we let Mr. Murray make his argument? Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Andrew Murray on behalf of Prince George's County, Maryland. Your Honor, this case is sort of digressed into the form of an amoeba. No shape or rhyme or rhythm to it. So let me try to wrap the arms around what really is the sole issue raised in this case, page one of Mr. Wood's brief, and that is whether the district court erred in applying the three Penn Central factors to his Fifth Amendment takings case. And, of course, Penn Central applies to ad hoc regulatory takings, not per se takings, not physical takings. The court below noted that the plaintiff did not raise a physical takings claim, yet he makes arguments before this court of a physical taking. He makes arguments of a per se taking not raised in his statement of issues. So his tact before in this case was create a public nuisance, flout local officials' efforts to get compliance with abatement, and when finally called to task to be held accountable before a nuisance abatement board, challenge the process and launch counter accusations. The district court didn't buy that tact. Well, he says the nuisance wasn't his property at all and that the photographs are not of his property. What's your response to that? Thank you, Your Honor. My response is that what is not at issue in this case, as Judge Wynn has noted and as Judge King has noted, is whether or not a nuisance occurred. That plane flew in another direction and is not before this court. What is also not before this court is the constitutionality of Section 14173 of the County Code, whether the authority of the nuisance abatement board to abate a nuisance exists, and as I said, whether a nuisance— So it doesn't matter whether or not that was his property? He says it wasn't his property, that where the nuisance was found was not his nuisance. Well, the nuisance abatement board found ample evidence of nuisance on his property.  Yes, Your Honor. Clearly, he testified that some of the dumping, for lack of a better term, his property adjacent to a residential area was essentially a dump. He appealed that in the state court system. He did not appeal that. And per the County Code, he had a right to appeal from the nuisance abatement board to the circuit court and then on to the two appellate levels of the Maryland court system, which he did not do, had he wished to contest whether or not a nuisance actually occurred. Right. And then I also want to give you the opportunity to respond. Opposing counsel said appellee admitted to engaging in some sort of fraudulent— to fraudulently signing something. Do you know? What he's talking about? I don't. I don't, Your Honor. In the case below, he made a claim about disparate treatment with racial undertones, and the court disposed of that, and I think this statement here about fraud and irregularities is sort of a work around the fact that that issue is not before this court. It's just the sole takings claim. And so it's clear that there was no per se taking, and we're here on the pencil— And so all his arguments about how his property was locked and he couldn't get on it, that was not what was at issue below. Does that matter? Well, the district court addressed that, Your Honor. The district court addressed the padlocking and noted that Mr. Woods was given some access to his property. That was clearly in the record, and in fact, when the NAB, the Nuisance Abatement Board, issued its first order in May of 2023, in your joint appendix, you will see that on December 7th, his counsel emailed the DPI, Department of Permitting, Inspections, and Enforcement, the agency responsible with enforcing these provisions, requesting a reinspection because the property had been abated. So sometime between May and December, the property, according to plaintiff, all the problems had been abated, and then we know that shortly thereafter, he sold the property. And as we know, there is no evidence in the record about what the sale of that property was, but it's pretty clear that a piece of property that has been cleared of rubbish and debris that the county was on the property owner about would be worth more than the sale of a property that was loaded with the garbage. And by that timeline, it also appears that he was able to access the property sufficiently to abate the nuisance. Which seems pretty obvious, Your Honor, of course. And so, without belaboring, without going through each of the Penn Central factors, I just want to address the one that the court found in favor of Appellant Woods, and that was on the second factor, investment-backed expectations. And the court below cited irregularities in the board's process. And for the proposition that an investor in Mr. Woods' position would not have foreseen nuisance abatement board irregularities, it looked to the Willowbrook case, which I believe was decided by this court, that had to do with rent control, I believe in Baltimore City, and a hold on any fines for late rent. And in that case, essentially the landlords, while the district court noted that the landlords could expect some regulation, it was the breadth of that regulation, really, that the landlords could not have anticipated. And so, the district court similarly found that Mr. Woods could not have expected irregularities in the nuisance abatement board process. But in Willowbrook, the breadth of the regulation enacted by Baltimore City essentially exposed the landlords to additional harm, by not being able to increase rents, by not being able to levy fines. In this instance, and I suppose I take issue with the district court's conclusion under this element, in this instance, the irregularities cited by the board did not expose Mr. Woods to any additional harm. In other words, had everything been followed as per the county code, there's no question that a nuisance would still have been declared. There's no question that he would not have been able to make a takings case because of this declaration of a nuisance, because the evidence was so clear. And so, what I'm trying to say in sort of a long way is I think that the district court could have found for the county on that element of the Penn Central analysis as well. Are you familiar with the case that I mentioned? I am not, Your Honor. It seems to me you ought to take a look at that case. I agree. This case came down last year, and it seems to really address the whole question of property and takings. It's actually an analogous situation here, an inverse condemnation type proceeding. This was, but it's basically the same kind of case in which it was alleged that damages should be paid for the takings type clause. The court made it very clear that a nuisance abatement, if something is a nuisance, you're not actually taking it. So, the property is not being taken. I think, but anyway, you didn't cite it, so I'll leave it at that. So, Your Honor, I think the crux of this case is really the county's putting a lock on the gates to the property, which is really what I think brings us here. The district court analyzed that and found that access, limiting access, citing the Blackburn case and others, limiting access is easily distinguished from actually physically occupying or acquiring property for the county or for the benefit of a third party. I'm reminded, when my kids were young and I asked them to clean their room, it was always met with some equivocation, hesitation, but when I took their cell phones away, the room seemed to get clean really quickly. The nuisance abatement board order would not be worth the paper it's written on, unless there was some real enforcement mechanism to get the property owner, especially in this case, Mr. Woods, who, if you look at the second nuisance abatement board . . . What is the simplest way you think this case should be disposed of? Much has been said here, but it seems very clear that if you deal with just the property interest, much of what's being said is not necessary. Agreed, Your Honor. So, what is the simplest way? It is, and there's no evidence of a diminution in property. The property was sold, likely for more than it was worth at the time that it had all the rubbish on it. This Catch-22 that Appellant cites goes both ways. He claims he didn't have access to the property, but by the same token, the county can't enforce its orders. So, this came out before discovery was completed, the sale of the property? Apparently so, yes. That could have been put on the record and was not. You referred to the nuisance abatement order. Is that the first order, the second order, or the two of them read together? Well, there were two hearings, Your Honor. There were two hearings . . . Right. . . . and that the plaintiff had, before the whatever the commission is called there, and there were two orders entered. Are those orders to be read together as one nuisance abatement order, or the first one, or the second one, the nuisance abatement order that you referred to? I would say it's the second order would then supersede the first, Your Honor. So, amended the first or followed? Yes. Were they eight months apart, six months apart? May and September. May, the first one, September, the second one. So, Your Honor, I would ask you to respectfully to affirm the decision of the district court, and unless there's any further questions . . . Just one last question. The county did put the headlock on the property, and I take it that's an authority to abate a nuisance? Yes, Your Honor. Where is it indicated that that's part of the authority of the county? I don't know that we would see that in the county code, Your Honor, but the general exercise of police powers to enforce and abate the nuisance, there has to be some enforcement mechanism. Otherwise, as I said, the order is not worth anything, and in fact, appears to have been flouted, because in that second opinion of the nuisance abatement board . . . But, how can he abate it, if it's locked? Well, he apparently did abate, per his email.  But, it required coordination with county employees to come and unlock and open the gate, so he could . . . And, he complained at the second hearing that you all hadn't let him on the property after the first hearing. Kept him off. That's the reason he couldn't do whatever he wanted him to do. So, he made a complaint about that, and that hasn't been mentioned here before. He did complain about that, Your Honor. There was evidence also in the record that . . . He was locked out. There was also contrary evidence that he was allowed access to the property, and in fact, by December, his counsel . . . And, in the second order, the board tried to remedy that, or follow up on it, or something . . . Yes, and . . . And, provide that he could get proper access for whatever he wanted, and get the job done. Correct, Your Honor. And, the board . . . I believe the language the board used in its order was to have Mr. Woods contact DPI more than a few hours in advance, or a day in advance . . . DPI was a . . . D-P-I-E, whatever that was . . . And, those are capital letters, abbreviations, acronyms, or whatever . . . Yes, sir. . . . supposed to be letting him on the place. Yes, sir. Department of Permitting, Inspections, and Enforcement. DPI . . . I've never heard that before. Department of Permitting, Inspections, and Enforcement. That sounds like it ought to be in the federal government. Yeah. So, the county exercising its police powers to abate a nuisance does not require compensation under the Fifth Amendment. I respectfully request the panel to affirm the decision of the district court. Thank you. Thank you, Mr. Murray. Mr. Helliott. Thank you, Your Honors. Your Honors . . . Justice Thacker, I'll point you to the joint appendix that references the fraud allegations I mentioned on the record. That's JA191 at Statement of Material, Fact 5, and JA198 at Statement of Material, Fact 37. Those reference deposition testimony from nuisance abatement board members . . . And, it was given to the administrator for them to vote on. A vote never happened. And, in one of the two online check boxes that they're supposed to mark . . . They check that they receive a sworn affidavit. And, they admit on the record that they never had received an affidavit for any of the nuisance petitions that were submitted to them. And, since the . . . The rules require affidavits. So, the Prince George . . . And, they submitted some evidence that was an affidavit. So, the Prince George County . . . And, they used the word sworn affidavit. What's the difference between a sworn affidavit and an affidavit? They didn't submit any affidavit. My point is, what they . . . The code requires, Your Honor, is the standard form, which is a nuisance petition form, a sworn affidavit. I mean, we would have even taken affidavit, whether it's . . . Well, an affidavit is an affidavit. You don't have to use the word sworn in front of it. The code does, Your Honor. So, I . . . The code does. I agree with you completely. But, that's for them to be arguing about, not us. Well, Your Honor, that goes to the regulatory taking aspect, right? That goes to one of the three Penn Central factors. And so, Your Honor, my point is that the character of the regulation here . . . There was a clear requirement for the nuisance abatement board, made up of non-attorneys, right? Three of which sat from the agencies that actually filed the petitions. There was a clear requirement for how this board was supposed to work, because it was not a court. It is not a court, right? Even though it's entering closure orders for up to 12 months, that are quasi-injunction in nature. It's not a court. It's an administrative body. It's an administrative body at the local level. I thought I was going to . . . I'm sorry, Judge King. No, I'm sorry. You go. I thought you were going to point me to somewhere where they admitted fraud. These are your . . . well, these are appellant's statements. And, I don't see the word fraud or fraudulently in either of those two paragraphs. Now, you do say egregious misrepresentations, but where are the . . . Where's something in quotes where they admitted we fraudulently signed something or did something? Because that's what I thought you represented in your opening there. And, Your Honor, I apologize. Let me be clear about . . . You were stretching a little bit there, weren't you? That's the kind of thing we don't think much of in these courtrooms. No, Your Honor, and I apologize. I just want to be clear. We argue that it's fraud in the brief because during the depositions, they clearly . . . That's not what you said when you stood up here at the podium and said that they admitted that they fraudulently signed something or fraudulently did something. That's what you said. That was my recollection. But that's not an accurate recitation of what happened, is it? Your Honor, let me be clear of what happened and what's specific. So that wasn't accurate. What you said earlier was not accurate. So it was, Your Honor, but I want to caveat it. It was. And the deposition transcripts that are in the record . . . It was accurate? Yes, because this is what . . . That they admitted fraud. So they admitted to engaging in fraud, yes. And you said that's what they were asked, and in their deposition testimony, that was the colloquy before. And so is there somewhere in here, is there a deposition testimony I can look at where they said that? I thought that might be what you would point me to, something that actually supported your argument. Your Honor, those statement of material facts actually reference the . . . I see that they're references, so you want me to go find all of the rest of that somewhere in the JA? No, sorry, Your Honor. I don't want to do this anymore. I understand what's going on. I sort of took your fraudulent allegation to be there is an affidavit that the county code requires. There was no affidavit. And then the code requires that the board checks boxes regarding the hearing. They didn't do that. And flowing from that, I guess there's an inference you were saying of them being a fraud. That they're doing something that is not in compliance with the code. No affidavit was attached to it, as the code requires, nor did they check those boxes. And that's pretty much there. In other words, I think that's a given, to the extent it has any relevance here. Yes, Your Honor. Let me add one thing to that. One of those check boxes specifically said, I have reviewed the affidavit that's required under the county code. And they all checked the boxes, and they all admitted on the record that they never reviewed any affidavits in connection with a nuisance petition. And yet they checked these boxes that said that they had reviewed these affidavits that were required under the county code. And I apologize, Your Honor. That's what I was talking about. Your Honors, I just want to clarify two things really quickly in the last 30 seconds that I have. The Supreme Court in Cedar Point made clear that a taking of property, however long, if it's deemed a taking, it doesn't matter if it's one month, five months, permanent, a physical taking of property is, a homeowner or a property owner is required to adjust compensation under the Fifth Amendment. The temporal nature of the taking is irrelevant under Cedar Point. Can it be a partial taking, or must it be a complete taking? It doesn't have to be a complete taking. The physical taking has to be, you have to bar someone from being able to access their property and being able to use their property. The regulatory taking analysis under the Penn Central factors can be a partial taking. And there are those three factors that you look at. And I'll just note that the Court found one factor in our favor. The Supreme Court has never – I'm sorry, Your Honors, I'm out of time. Can I just finish this brief point, if that's okay? Be quick. Thank you, Your Honor. The lower court found one of the factors in our favor. The Supreme Court has said these factors are not dispositive. And so, therefore, just finding one factor in our favor should have sent this case to a jury to weigh the evidence and determine and do the balancing test if the Penn Central regulatory taking analysis applied. We are saying the physical taking analysis applied, so you didn't have to get there. But since the lower court did analyze it under the Penn Central and found one in our favor, because no factor is dispositive, we're arguing that this case should have been sent to the jury then to weigh the factors and weigh the evidence and credibility to make a determination on whether a taking has occurred. Thank you, Your Honors. I respectfully request that the Court reverse and remand this case to the lower court. Thank you very much. We'll come down and greet counsel and then go to the next case. That's all right.
judges: Robert B. King, James Andrew Wynn, Stephanie D. Thacker